# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| *Respondent/Plaintiff*, ) | |
| ) | |
| v. ) | Case No: 09-CR-0022-JHP |
| ) | |
| JOHN LAWRENCE STANLEY, ) | |
| ) | |
| *Petitioner/Defendant*. ) | |

## ORDER AND OPINION

Before the Court is Petitioner John Lawrence Stanley's ("Stanley") Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody brought pursuant to 28 U.S.C. § 2255 [Doc. No. 100]. For the reasons cited herein, Petitioner's motion is **DENIED.**

## BACKGROUND

On March 2, 2009, a federal grand jury charged Stanley with three counts of armed bank robbery in violation of 18 U.S.C. §§ 2113(a) and 2113(d). [Doc. No. 1]. On April 8, 2009, following Stanley's arrest, the Court appointed Julia O'Connell, the Federal Public Defender, to represent Stanley. [Doc. No. 7]. After meeting with Stanley several times in the weeks following his initial appearance, Ms. O'Connell filed a Motion for Continuance so that Stanley's mental health could be evaluated. [Doc. No. 10]. At a the pretrial hearing held on April 29, 2009, Ms. O'Connell provided the Court with additional information regarding her request for a continuance, explaining that she believed Stanley was competent to stand trial, but sought a mental health evaluation for purposes of assessing Stanley's mental health capacity at the time the offense conduct occurred. [Doc. No. 12]. The Court granted the Motion for Continuance and set the case for trial on the Court's July 20, 2009 trial docket. [*Id.*]

On May 29, 2009, Stanley filed a Motion for Dismissal of Counsel, in which he announced his desire to represent himself, requested the services of an independent investigator, and sought a sixty-day continuance of the trial date. [Doc. No. 14]. Stanley later wrote to the court clerk, asking that all correspondence in the case be sent directly to him. [Doc. No. 15]. Stanley attached a copy of a letter he sent to Ms. O'Connell informing her of his intent to proceed *pro se* and requesting that her office send him his file and all information about the case. [*Id.*] On June 24, 2009, Ms. O'Connell moved to withdraw as attorney of record for Stanley, and requested that the Court appoint substituted counsel to serve as Stanley's standby counsel. [Doc. No. 16]. She informed the Court that:

> Counsel has discussed the matter with Mr. Stanley at length on more than one occasion, and believes he understands the perils of self-representation, but that he is firm in his conviction to serve as his own lawyer in this case. Counsel informs the Court that she also believes Mr. Stanley is competent; in her opinion, he understands the nature and consequences of the proceedings and is capable of assisting in his defense.

[Doc. No. 16]. At the June 26, 2009 pretrial conference, the Court addressed the pending motions regarding Stanley's representation. [June 26, 2009 Hrg. Tr. at 2]. After noting that the case was set for trial on July 20, 2009, the Court asked Stanley about his desire to represent himself:

> THE COURT: Let me start by asking you a couple of questions. It's my understanding you've asked Ms. O'Connell to file a motion allowing her to withdraw as counsel. And she's also, in that same motion, requested substitution of counsel as standby counsel. And that all leads to the ultimate conclusion that you want to represent yourself. Is that correct?
>
> THE DEFENDANT: That's correct, Your Honor.
>
> THE COURT: And I would assume, without knowing, that you haven't represented yourself or anyone else in the past in any proceeding, have you?
>
> THE DEFENDANT: No, I have not.
>
> THE COURT: And what do you understand what you're charged with?

> THE DEFENDANT: Bank robbery, three counts.

[*Id.* at 3-4]. The Court then cautioned Stanley about the perils of self-representation:

> THE COURT; And let me just say that I've been through, in my career, probably less than a half a dozen, but some five or six cases where defendants, I've allowed them to have standby counsel. And maybe at least half of that many, by the time we got through the trial, they had decided they's just as soon not represent themselves and had to turn the case back over to standby counsel. And the reason for that, my observation is, I give you this information is that practicing law is – you hear the term sometimes people say things are not rocket science. Well, this is rocket science. I mean, I say it out of years of experiences. Practicing law is complex. Even for those of us who have been schooled and have had experience, it's difficult. It's – the process involves rules by which evidence is submitted and which evidence is refused, and rules by which the jury is instructed, has to be coordinated with the presentation of the defense.
>
> THE DEFENDANT: Right.
>
> THE COURT: And for whatever it's worth to you, I just think it's – it's not impossible, but it's close to impossible for one defending themselves to get the full benefit of due process. Now, and it's a common saying among the profession, and even lawyers occasionally find themselves in a position where they need lawyers, and it's a much overused and overworked term, but I'm sure it's – from my perspective, it's worth repeating. Most of those of us who are lawyers would say that, if we represent ourselves, we have a fool for a lawyer. You've heard that.
>
> THE DEFENDANT: Several times.
>
> THE COURT: It just goes down – it probably is emphasized when somebody who's not a lawyer attempts to be a lawyer, attempts to represent themselves.

[*Id.* at 4-5]. Stanley assured the Court that he would not rely on the Court to walk him through the process, and stated, "I don't see a problem at this point where I cannot defend myself." [*Id.* at 7]. The Court then inquired into Stanley's legal experience and Stanley expressed his confidence that he could handle his defense:

> THE COURT: Have you ever watched a trial of somebody else?
>
> THE DEFENDANT: Oh, yes.
>
> THE COURT: Have you ever been tried in a case? Have you been through a trial?

> THE DEFENDANT: No. Let me explain this. I'm a learned man. I spent 10 to 12 years in the university. All I need is a law library for the two months continuance I've asked for, and I will have the grasp that I need. Behavior is my specialty. Knowing the dos and don'ts of where to turn, what to ask, and so forth, I can handle that. The only problem I have is I need law books that will lead me to where I want, and there's not anything that I cannot learn from a law book that any other lawyer has learned.

[*Id*. at 7-8]. Stanley went on to assert that he was qualified to represent himself, and explained that his mental state was not a problem:

> I know what my rights are. I read them and I understand them. I've been around a long time. I'm 65 years old. And I've lectured at law schools, law enforcement. I've trained federal agents. I know pretty much what to do. If I can read it, I understand it. I don't have a problem with vocabulary. And if I understand right, for me to represent myself, there's only two qualifications. One is not being illiterate, which I'm not. Second is my mental state. I feel like I'm mentally healthy at this time. I do have depression. As long as I get my medication, I don't have a problem. And they've been giving it to me without a problem. Those are the only two things that from what I understand. And I look forward as a challenge to take on the federal government.

[*Id*. at 9]. Stanley explained that he needed an investigator or paralegal and access to a law library, but insisted that he did not want an attorney. [*Id.* at 10-12]. He told the Court that though he had no disrespect for Ms. O'Connell, he decided to represent himself because he "had no control of the public defender." [*Id.* at 11].

The Court granted Stanley's motion to proceed pro se, allowed the Federal Public Defender to withdraw, and appointed James Fatigante as standby counsel. [Hearing at 16-17; Doc. No. 17]. The Court took under advisement Stanley's motions for a sixty-day continuance and for the appointment of an investigator, giving Stanley time to discuss the matters with standby counsel, and five days to file any further pleadings after that consultation. [*Id.* at 16].

On July 9, 2009, a superseding indictment added three charges that Stanley possessed a firearm in furtherance of a crime of violence, in connection with each of the original armed robbery counts. [Doc. No. 21]. On August 5, 2009, Stanley moved to dismiss the superseding

indictment, based upon the government's alleged delay in filing it. [Doc. No. 29]. Stanley also renewed his requests for access to a law library and for an investigator. [Doc. No. 30]. The Court denied Stanley's request for an investigator, noting that standby counsel could assist Stanley by interviewing witnesses and gathering evidence. [Doc. No. 31]. The Court also rejected the request for access to a law library, observing that standby counsel could assist with legal research, and that Stanley admitted that he could request any materials from the prison's law library. [*Id.*] At a pretrial hearing, the Court denied Stanley's motion to dismiss, noting that he had conceded that the charges brought against him were not barred by the applicable statute of limitations, and adopting the government's response regarding prejudice and harassment. [Aug. 27, 2009 Hrg. Tr. at 6-7].

On September 14, 2009, the jury trial began and Stanley represented himself with Mr. Fatigante acting as standby counsel. Before the jury was selected, the government announced it was dismissing Counts One and Two of the superseding indictment. [Trial Tr. at 12-13; see Doc. No. 50]. After multiple witnesses testified about two bank robberies in Tulsa, Stanley's relatives identified surveillance photos of the robber as Stanley, and confirmed that he was in Tulsa for a funeral on the day of the second robbery. Witnesses described the Kansas City robbery, and Stanley's statements after his arrest for that robbery, which included his admissions that he had robbed 34 banks in six different states, including banks in Tulsa, and his description of his modus operandi. The jury convicted Stanley of all four remaining counts of the indictment. [Doc. No. 54]. On October 28, 2009, the Court sentenced Stanley to a total of 684 months imprisonment, comprised of concurrent eighty-four month terms as to Counts Three and Five, and two consecutive 300 -month terms as to Counts Four and Six. [Doc. No. 62].

Stanley appealed his conviction and the Tenth Circuit appointed Mr. Fatigante as his appellate counsel. On appeal, Stanley argued that the Court erred in (1) denying him personal access to a law library; (2) denying his motion for a private investigator; (3) denying him the ability to subpoena certain witnesses and (4) denying Stanley's motion to dismiss the indictment for undue delay. The Tenth Circuit affirmed Stanley's conviction. *United States v. Stanley*, 385 F. App'x 805 (10th Cir. 2010), *cert denied* 131 S.Ct. 548 (2010).

On May 5, 2011, Stanley filed a motion for the appointment of counsel to file his §2255 motion. [Doc. No. 85]. The matter was referred to a Magistrate who recommended that the motion be denied. [Doc. No. 87]. This Court followed the Magistrate's recommendation and denied the motion for counsel. [Doc. No. 94]. On November 2, 2011, Stanley filed his motion to vacate, set aside or correct his conviction pursuant to 28 U.S.C. § 2255. [Doc. No. 100]. Stanley's § 2255 motion contains two grounds: (1) "the district court violated defendant's Sixth Amendment right to counsel by failing to adequately determine that defendant's decision to waive counsel and represent himself was made voluntarily, knowingly and intelligently;" and (2) FPD Julia O'Connell provided him ineffective assistance of counsel because she did not provide him with a defense for mental health issues. [*Id.* at 13, 16-17]. In support of Ground Two, Stanley attached a copy of a confidential psychological evaluation prepared by Curtis D. Grundy, Ph.D. prepared May 22, 2009. [*Id.* at 24]. The report indicates it was requested by FPD O'Connell to "assist with differential diagnosis and assessment of his mental status." [*Id.*] The evaluation concluded that:

> Review of Mr. Stanley's clinical presentation and current testing indicates that he is fit to proceed in the present matter. He is cognizant of the allegations that are pending and the ramifications that could be imposed. His mental status indicates that he has the ability to rationally assist his attorney, despite having active symptoms of mental illness that are observed at the time of evaluation.

[*Id.* at 29]. The Court ordered the government to respond to Stanley's § 2255 motion. [Doc. No. 102]. Then, on June 26, 2013, Stanley filed a supplement to his § 2255 motion, asserting an additional ground for relief pursuant to the Supreme Court's recent decision in *Alleyne v. United States*, 133 S.Ct. 2151, 2013 WL 292216 (June 17, 2013). [Doc. No. 113].

## DISCUSSION

Section 2255 is not a substitute for an appeal and is not available to test the legality of matters which should have been challenged on appeal. *U.S.A. v. Mohammad Rizwan Ali Khan,* 835 F.2d 749, 753 (10th Cir. 1987), *cert. denied,* 487 U.S. 1222 (1988). As a result, "failure to raise an issue either at trial or on direct appeal imposes a procedural bar to habeas review." *United States v. Cervini,* 379 F.3d 987, 990 (10th Cir. 2004) (quoting *United States v. Barajas-Diaz,* 313 F.3d 1242, 1245 (10th Cir. 2002). Failure to raise an issue on direct appeal bars the movant/defendant from raising such an issue in a § 2255 Motion to Vacate Sentence unless he can show "both good cause for failing to raise the issue earlier, and that the court's failure to consider the claim would result in actual prejudice to his defense,...." *Id.* Since a writ of habeas corpus is an equitable remedy, a court may consider the merits of the procedurally barred claim, if the defendant alternatively demonstrates "that 'failure to consider the federal claims will result in a fundamental miscarriage of justice.'" *Id.*

In *United States v. Galloway,* 56 F.3d 1239, 1242 (10th Cir. 1995), the Tenth Circuit held claims of constitutionally ineffective counsel should be brought on collateral review. Consequently, no procedural bar will apply to ineffective assistance claims which could have been brought on direct appeal but are raised in post-conviction proceedings. A habeas petitioner may raise substantive claims which were not presented on direct appeal, however, if he can

establish cause for his procedural default by showing he received ineffective assistance of counsel on appeal.

A court considering a claim of ineffective assistance of appellate counsel for failure to raise an issue is required to look to the merits of the omitted issue. Where the omitted issues are meritless, counsel's failure to raise it on appeal does not constitute constitutionally ineffective assistance of counsel. *Hooks v. Ward,* 184 F.2d 1206, 1221 (10th Cir. 1999). *See also, Smith v. Robbins,* 528 U.S. 259, 288 (2000). Furthermore, issues previously raised and disposed of on direct appeal generally will not be considered in a § 2255 motion absent an intervening change of law in the circuit. *United States v. Prichard,* 875 F.2d 789 (10th Cir. 1989) (citing *United States v. Nolan,* 571 F.2d 528 (10th Cir. 1978)).

**A. Ground One: Stanley's Waiver of Assistance of Counsel at Trial**

In his § 2255 motion, Stanley asserts that his Sixth Amendment right to counsel was violated because the Court failed to determine whether decision to waive his right to counsel and represent himself was made voluntarily and knowingly. The Government argues that Stanley is procedurally barred from raising this issue in his § 2255 motion because Stanley failed to raise this issue on direct appeal.

As outlined above, relief under § 2255 "is not available to test the legality of matters which should have been raised on appeal." *United States v. Walling*, 982 F.2d 447, 448 (10th Cir. 1992) (quoting *United States v. Khan*, 835 F.2d 749, 753 (10th Cir. 1987)). "A defendant who fails to present an issue on direct appeal is barred from raising the issue in a § 2255 motion, unless he can show cause for his procedural default and actual prejudice resulting from the alleged errors, or can show that a fundamental miscarriage of justice will occur if his claim is not addressed." *United States v. Allen*, 16 F.3d 377 (10th Cir. 1994).

Stanley concedes that he failed to raise this issue on direct appeal. Nevertheless, Stanley contends that he should not be barred from raising this issue because he can show good cause for his failure to raise this issue on direct appeal and that a fundamental miscarriage of justice will occur if his claim is not addressed. The Court finds both arguments unpersuasive. Accordingly, Stanley is procedurally barred from raising the issue his waiver of assistance of counsel at trial in his § 2255 motion.[1]

## B. Ground Two: Ineffective Assistance of Counsel

As his second ground for relief, Stanley argues that Ms. O'Connell's failure to seek a second mental health evaluation was so serious an error that it deprived him of his Sixth Amendment right to effective counsel. In evaluating Stanley's claim of ineffective assistance of counsel, this Court is guided by the familiar holding of *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984), which sets out the two elements necessary to demonstrate that an attorney's performance constituted an ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defendant. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or [] sentence resulted from a breakdown in the adversarial process that renders the result unreliable.

Evaluation of an ineffective assistance claim is a fact-intensive inquiry, requiring a court to determine "whether counsel's assistance was reasonable considering *all the circumstances*." *Id.* at 688 (emphasis added). As the Supreme Court explained in *Strickland*, "representation is an

---

[1] Irrespective of the Court's finding that Stanley's first asserted ground for relief is procedurally barred, Stanley is not entitled to relief on his first ground for relief because the Court's colloquy with Stanley at the June 26, 2009 pretrial conference was sufficient to establish that Stanley knowingly and intelligently waived his right to counsel. *See United States v. Turner*, 287 F.3d 980, 983 (10th Cir. 2002); *United States v. Willie*, 941 F.2d 1384, 1389 (10th Cir. 1991).

art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another." *Id.* at 693.  As such, great deference is granted to defense counsel's reasoned choice of action:

> It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance: that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Id.* at 689 (internal citations omitted).  *See also Boyd v. Ward*, 179 F.3d 904, 915 (10th Cir. 1999)("[T]hose accused of crimes, even capital crimes, are entitled only to a reasonable and adequate defense, not the defense which, in hindsight, they believe would have been best.").

Stanley also bears a heavy burden of proving that the claimed errors actually had an adverse effect on his defense.  Given "the presumption that a criminal judgment is final is at its strongest in collateral attacks on the judgment," Stanley must show more than "that the errors had some conceivable effect on the outcome of the proceedings [as] [v]irtually every act or omission would meet that test." *Strickland*, 466 U.S. at 693, 697.  Rather, Stanley is required to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Stanley argues that Ms. O'Connell's failure to seek a second mental health evaluation was so serious an error that it deprived him of his Sixth Amendment right to effective counsel. [Doc. No. 100 at 16].  The Court disagrees.  By Stanley's own admission, Ms. O'Connell sought

a continuance and retained a psychologist to conduct a mental health evaluation. [*Id.*] The results of the mental health evaluation, which Stanley attached as Exhibit 4 to his motion, demonstrate that Dr. Grundy conducted an extensive mental health examination. [Doc. No. 100 at 24]. Further, Dr. Grundy concluded that Stanley was fit to stand trial, and was mentally competent at the time he the offense conduct. [*Id.* at 28-29].

Significantly, Ms. O'Connell only represented Stanley for a short period of time following her receipt of Dr. Grudy's report, and Stanley did not make any effort to seek a second mental health evaluation after he elected to represent himself. It is well-established that *pro se* defendants cannot allege ineffective assistance of counsel, *see United States v. Dotson*, 28 F. App'x 801, 802 (10th Cir. 2001), therefore, the Court analysis of Ms. O'Connell's representation is limited to the time period during which Ms. O'Connell represented Stanley.

Under these circumstances, the Court finds that Ms. O'Connell's decision not to have Stanley's mental health re-evaluated was not made in error. Absent some indication that Ms. O'Connell had reason to doubt the validity of Dr. Grundy's finding, Ms. O'Connell's decision to forgo a second mental health evaluation was reasonable. The Court also notes that Stanley did not seek an additional mental health evaluation during the course of his self-representation. Further, even if Ms. O'Connell's decision was unreasonable, the Court finds that Stanley cannot meet the heavy burden of demonstrating that he was prejudiced by Ms. O'Connell's representation. Accordingly, the Court finds that Stanley's second ground for relief does not entitle him to relief pursuant to 28 U.S.C. § 2255.

C. Ground Three: Application of *Alleyne v. United States*

As his third ground for relief, Stanley seeks a reduction in his sentence in light of the Supreme Court's recent decision in *Alleyne v. United States,* 133 S.Ct. 2151, 2013 WL 2922116 (June 17, 2013), which expressly overruled the decision in *Harris v. United States*, 536 U.S. 545 (2002), and held that because "brandishing" increases the mandatory minimum under § 924(c)(1)(A), it is "an 'element' that must be submitted to the jury" and not found by the judge. *Alleyne* enunciates a rule of constitutional law and "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final." *Griffith v. Kentucky,* 479 U.S. 314, 328 (1987). Generally, however, new constitutional rules are not applied to criminal cases on collateral review. *Teague v. Lane,* 489 U.S. 288, 303 (1989). This general rule is subject to two limited exceptions. New rules of criminal procedure are applied to cases on collateral review if (1) it places "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe" *id.* at 311, or (2) it "would be so central to an accurate determination of innocence or guilt," *id.* at 313. The constitutional rule announced in *Alleyne* simply does not fit within either of these limited exceptions. Consequently, because the Court finds that *Alleyne* does not fall within either of the exceptions to the non-retroactivity rule, the Court declines to apply *Alleyne* in this section 2255 proceeding.

## CONCLUSION

For the reasons cited herein, Petitioner John Lawrence Stanley's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody brought pursuant to 28 U.S.C. § 2255 [Doc. No. 100] is **DENIED.**

James H. Payne
United States District Judge
Northern District of Oklahoma

12